IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

LATROY MOORE,                     *
                                  *
        Plaintiff,                *     CIVIL ACTION NO. 15-00070-B
                                  *
vs.                               *
                                  *
CAROLYN W. COLVIN,                *
Commissioner of Social            *
Security,                         *
                                  *
        Defendant.                *

## ORDER

Plaintiff LaTroy Moore (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.* On October 9, 2015, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 19). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED.**

I.   **Procedural History**

Plaintiff filed his applications for benefits on August 16, 2011. (Tr. 166-68). Plaintiff alleged that he has been disabled since December 30, 2009, due to "right knee, right leg, right ankle, [and] depression." (Id. at 209, 214). Plaintiff did not allege any intellectual limitations in his disability applications, nor did he claim any intellectual limitations at his hearing.[1] (Id. at 48, 214, 408).

Plaintiff's applications were denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge Mary E. Helmer (hereinafter "ALJ") on May 8, 2013. (Id. at 48). Plaintiff attended the hearing with his counsel and provided testimony related to his physical impairments. (Id. at 51). A vocational expert ("VE") also appeared at the hearing and provided testimony. (Id. at 60). On June 13, 2013, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 37). The Appeals Council denied Plaintiff's request for review on December 16, 2014. (Id. at 1-2). Therefore, the ALJ's decision dated June 13, 2013, became the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff

---

[1]   After Plaintiff's administrative hearing, his attorney submitted a report from Dr. Donald Blanton, Ph.D., containing a diagnosis of mild mental retardation and a Full Scale IQ score of 62. (Tr. 408-09).

timely filed the present civil action. (Doc. 1). The parties waived oral argument on October 9, 2015 (Doc. 18), and agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.   Issues on Appeal

> 1. **Whether the ALJ erred in failing to find that Plaintiff meets the criteria for Listing 12.05C and in rejecting the opinion and diagnosis of Plaintiff's consulting psychologist, Dr. Donald Blanton, Ph.D.?**
>
> 2. **Whether the ALJ erred in rejecting the opinion of Plaintiff's treating physician, Dr. Perry Timberlake, M.D. regarding the severity of Plaintiff's pain and physical limitations?**

## III.  Factual Background

Plaintiff was born on March 15, 1976, and was thirty-seven years of age at the time of his administrative hearing on May 8, 2013. (Tr. 48, 209). Plaintiff testified that he was enrolled in special education classes in high school and was unable to pass the high school graduation exam, but that he completed the twelfth grade. [2]  (Id. at 265, 359). Plaintiff received his certificate of graduation. (Id. at 265).

---

[2] Plaintiff testified that he took the high school graduation exam three times but could not pass it. (Tr. 54). The record also shows that Plaintiff repeated the fifth grade. (Id. at 359).

According to Plaintiff's Disability Report, he last worked as a brick mason helper for various contractors for approximately eleven years, from 1995 to 2006. (Id. at 51, 201, 359). In addition, he mowed lawns. (Id. at 60, 207).

Plaintiff testified that he injured his knee playing football, that he has had knee problems his whole life, and that he can no longer work because of his knee and ankle pain and swelling. (Id. at 52-54, 284). An MRI taken in 2009 revealed a torn right lateral meniscus. (Id. at 54, 287). Plaintiff did not have surgery because he could not afford it. (Id.). His treatment has consisted of injections, draining fluid off of his knee once, and pain medications. (Id. at 56, 59). His medications make him drowsy, and he has to lay down for approximately three hours each day.[3] (Id. at 57-58). Plaintiff reported that he has never sought mental health care because he had "no reason" to do so. (Id. at 358).

Plaintiff testified that he lives alone in a mobile home and that his mother does all of his cooking, cleaning, and shopping. (Id. at 52, 58). He can walk half of a football field, can stand for five minutes, and has problems sitting. (Id. at 57). In his Function Report, Plaintiff stated that he can take care of his personal needs such as bathing, feeding,

---

[3] Plaintiff's current medications include Lortab (for pain), Amitriptyline (for nerves and sleep), Prednisone (for arthritis), and Celebrex (for arthritis). (Tr. 56, 266).

and using the toilet, but needs help shaving.  (Id. at 237).  He does not use any assistive devices, such as a cane or walker. (Id. at 242).

Plaintiff stated that he can count change but cannot pay bills or handle a savings account or a check book; he can pay attention for about thirty minutes; he does not follow written instructions well and cannot handle stress well; and he has never been fired from a job because of problems getting along with other people.  (Id. at 239, 241-42).  He has a driver's license, which he obtained after taking the written driving test five times, but he no longer drives because he has nothing to drive.  (Id. at 54, 239).  He enjoys reading newspapers and books and writing poetry.  (Id. at 359, 409).

**IV.  Analysis**

    **A.   Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[4]  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that

---

[4] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).   The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.   Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").   In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.   Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

B.   **Discussion**

An individual who applies for Social Security disability benefits must prove his or her disability.   20 C.F.R. §§ 404.1512, 416.912.   Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a).   The Social Security regulations

provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[5]   20 C.F.R. §§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since December 30, 2009, the alleged onset date, and that he has the severe impairments of obesity and right knee meniscus tear.   (Tr. 35). The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any

---

[5] The claimant must first prove that he or she has not engaged in substantial gainful activity.   The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments.   If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.   If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work.   Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).   In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.   Id.   Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.   Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985).   If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.   Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).   See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id. at 38).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform a range of light work, except that "he should be allowed to alternate between sitting and standing positions every sixty minutes;" he "cannot operate foot controls with his right leg;" he "cannot climb ladders, ropes, or scaffolds. Kneel, crouch, or crawl;" he "should not be exposed to vibration, unprotected heights, or hazardous machinery;" he "is limited to performing simple, routine, and repetitive tasks, making simple, work-related decisions, and being exposed to few, if any, work place changes." (Id. at 38). The ALJ also determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, his statements concerning the intensity, persistence and limiting effects of the alleged symptoms are only partially credible for the reasons explained in the decision. (Id. at 40).

Given Plaintiff's RFC, the ALJ found that Plaintiff is not capable of performing his past work as a brick mason helper (heavy, semi-skilled), lawn mower (medium, semi-skilled), construction laborer (very heavy, unskilled), or fish cleaner (medium, unskilled). (Id. at 40). However, utilizing the testimony of a VE, the ALJ concluded that considering

Plaintiff's residual functional capacity for a range of light work, as well as his age, education and work experience, there are also other jobs existing in the national economy that Plaintiff is able to perform, such as "cashier", "storage facility rental clerk," and "self-service attendant," all of which are classified as light and unskilled. (Id. at 41). Thus, the ALJ concluded that Plaintiff is not disabled. (Id. at 42).

The Court now considers the foregoing in light of the record in this case and the issues on appeal.

    **1.**   **Issues**

    **A. Whether the ALJ erred in failing to find that Plaintiff meets the criteria for Listing 12.05C and in rejecting the opinion and diagnosis of Plaintiff's consulting psychologist, Dr. Donald Blanton, Ph.D.?**

In this case, Plaintiff argues that the ALJ erred in failing to find that he meets the criteria for Listing 12.05C (mental retardation), that the ALJ erred in rejecting the opinion of Dr. Donald Blanton, Ph.D., that Plaintiff has deficits in adaptive functioning in the areas of communication, work, use of community resources, and functional academic skills, and that the ALJ erred in rejecting the diagnosis of Dr.

Blanton that Plaintiff is mildly mentally retarded.[6]  According to Plaintiff, his Full Scale IQ score of 62, combined with Dr. Blanton's diagnosis of mild mental retardation and opinion that Plaintiff has deficits in adaptive functioning, satisfy the cognitive criteria of Listing 12.05C (mental retardation). (Doc. 12 at 2-3, 11).  The Commissioner counters that the ALJ did not err in finding that Plaintiff does not satisfy the cognitive criteria for Listing 12.05C because Dr. Blanton's opinions are inconsistent with the substantial evidence in the case and, thus, properly discredited, and because Plaintiff's Full Scale IQ score of 62 is not an accurate reflection of his capabilities.   To the contrary, Defendant argues, the substantial evidence (such as Plaintiff's work history of semi-skilled employment and his activities of daily living, which include reading books and newspapers and writing poetry) reflect adaptive functioning much higher than his IQ score would indicate.  (Doc. 15 at 9-10).  Thus, Defendant maintains, Plaintiff does not have the requisite deficits in adaptive functioning needed to meet the criteria of 12.05C.  (Id.). Having carefully reviewed the record in this case, the Court agrees that Plaintiff's claim is without merit.

In order for Plaintiff to meet Listing 12.05C (mental

---

[6] Because these three issues are inextricably interwoven, the Court discusses them together.

retardation), he must present evidence of "[a] valid verbal, performance or full scale IQ of 60-70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."[7]  20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05(C).   In addition, he must satisfy the "diagnostic description" of mental retardation in Listing 12.05 (the listing category for mental retardation/intellectual disability),[8] which provides that mental retardation "refers to

---

[7] For purposes of Listing 12.05C, the second prong requirement is met once there is a finding that the claimant has an additional severe impairment because the requirement of "significant work-related limitation of function" "involves something more than 'minimal' but less than 'severe.'"   Johnson v. Colvin, 2014 U.S. Dist. LEXIS 13497, *7, 2014 WL 413492, *3 (S.D. Ala. Feb. 3, 2014) (quoting Edwards by Edwards v. Heckler, 755 F.2d 1513, 1515 (11th Cir. 1985)).  In this case, the ALJ found Plaintiff's obesity and right knee meniscus tear to be severe, and the parties do not dispute that finding.  (Tr. 35).  Therefore, the second prong of Listing 12.05C, requiring a physical or other mental impairment imposing an additional and significant work-related limitation of function, is not in dispute in this action.

[8] On August 1, 2013, the Social Security Administration amended Listing 12.05 by replacing the words "mental retardation" with "intellectual disability."  See Hickel v. Commissioner of Soc. Sec., 539 Fed. Appx. 980, 982 n.2 (11th Cir. 2013) (citing 78 Fed. Reg. 46,499, 46,501, to be codified at 20 C.F.R. pt. 404, subpt. P, app. 1)).  "This change was made because the term 'mental retardation' has negative connotations, and has become offensive to many people.  Id.  (citations and internal quotation marks omitted).  "The Social Security Administration stated that the change does not affect the actual medical definition of the disorder or available programs or services."  Id. (citations and internal quotation marks omitted).  As in Hickel, this opinion uses the term "mental retardation" and "intellectual disability" interchangeably.

significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.05; see also Perkins v. Commissioner, Soc. Sec. Admin., 553 F. Appx. 870, 873 (11th Cir. 2014) (Listing 12.05(C) "requires a showing that the claimant meets the diagnostic criteria of Listing 12.05, including deficits in adaptive functioning; a qualifying IQ score; onset before age 22; and the requisite deficits in work-related functioning.").

The law in this Circuit provides that a valid IQ score of 60-70 creates a rebuttable presumption that the claimant manifested deficits in adaptive functioning prior to the age of twenty-two. See Hodges v. Barnhart, 276 F. 3d 1265, 1268-69 (11th Cir. 2001). Thus, "a claimant meets the criteria for presumptive disability under section 12.05C when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than a 'minimal effect' on the claimant's ability to perform basic work activities." Smith v. Commissioner of Soc. Sec., 535 Fed. Appx. 894, 897 (11th Cir. 2013)(quoting Lowery v. Sullivan, 979 F. 2d 835, 837 (11th Cir. 1992)).

The presumption under 12.05C can be rebutted, however, when

the IQ score is inconsistent with record evidence of a
claimant's work history, daily activities, and behavior.[9]   See

---

[9] In addressing the "adaptive functioning" aspect of Listing
12.05C, the Eleventh Circuit has sustained the rejection of
claims under this Listing where the claimant's IQ score was
significantly inconsistent with his/her adaptive functioning,
despite a qualifying IQ score.   For example, in Perkins v.
Commissioner, Soc. Sec. Admin., 553 Fed. Appx. 870 (11th Cir.
2014), the Eleventh Circuit upheld the ALJ's finding that
Listing 12.05C was not met where the plaintiff performed skilled
jobs, including as a skilled cook, managed other workers, and
made contradictory claims regarding his education and employment
history.   Also, in Hickel v. Commissioner, 539 Fed. Appx. 980,
984 (11th Cir. 2013), the Eleventh Circuit held that the ALJ did
not err where he acknowledged that the claimant had a valid IQ
score between 60 and 70, applied the presumption established by
Hodges v. Barnhart, 276 F. 3d 1265, 1268-69 (11th Cir. 2001),
and found that the presumption was rebutted by other evidence
that showed that the claimant did not have "deficits in adaptive
functioning."   In reaching that decision, the court noted that,
although the claimant had been enrolled in special education
classes, she worked part-time in a nursery, was a high school
graduate, prepared simple meals, dressed herself, drove herself
to work, attended church regularly, and socialized with friends.
Id. at 984-985.   See also Popp, 779 F.2d at 1499-1500 (affirming
finding that Listing 12.05C was not met where the plaintiff had
worked skilled jobs, obtained a college degree, and had
exaggerated his deficits when examined); White v. Colvin, 2015
U.S. Dist. LEXIS 28277, 2015 WL 1013117, *4 (S.D. Ala. Mar. 9,
2015) (The ALJ properly found that, despite a Full Scale IQ
score of 63, the plaintiff did not have significant limitations
in adaptive functioning where the record reflected that,
although the plaintiff had been in special education classes, he
lived alone, maintained his financial affairs, and consistently
worked at several different jobs); Robinson v. Colvin, 2015 U.S.
Dist. LEXIS 43338, 2015 WL 1520431, *11 (S.D. Ala. Apr. 2, 2015)
(where the plaintiff lived independently without a highly
supportive living arrangement, cared for her personal needs, and
had a significant work history, the ALJ properly found that her
Full Scale IQ score of 60 was inconsistent with the record
evidence regarding her daily activities); Johnson, 2014 U.S.
Dist. LEXIS 13497, 2014 WL 413492, at *4 (although the ALJ never
stated that the claimant failed to meet Listing 12.05C, the
ALJ's finding that, despite a Full Scale IQ score of 62, the

Popp v. Heckler, 779 F.2d 1497, 1499-1500 (llth Cir. 1986). Indeed, neither a diagnosis of mental retardation nor a valid IQ score is conclusive of mental retardation where the diagnosis and IQ score are inconsistent with other record evidence regarding the claimant's daily living activities and behavior. See Robinson, 2015 U.S. Dist. LEXIS 43338 at *32, 2015 WL 1520431 at *11; Perkins, 553 Fed. Appx. at 873-74. Accordingly, the ALJ is tasked with determining whether there is sufficient evidence (relating to plaintiff's daily life) to rebut the presumption. See Grant v. Astrue, 255 Fed. Appx. 374, 375 (llth Cir. 2007); Hartman v. Colvin, 2014 U.S. Dist. LEXIS 91467, *7, 2014 WL 3058550, *3 (S.D. Ala. July 7, 2014).

In addition, as part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians. In reaching a decision, the ALJ must specify the weight given to

---

claimant had high adaptive skills, *i.e.*, he had the capacity to take care of his own needs, perform activities of daily living, and had successfully performed four different jobs since leaving high school, was sufficient to support his decision that the claimant was not mentally retarded); Lyons v. Astrue, 2009 U.S. Dist. LEXIS 128950 (M.D. Fla. May 24, 2009), adopted by 2009 U.S. Dist. LEXIS 48535, 2009 WL 1657388 (M.D. Fla. June 10, 2009)(The ALJ's finding that the claimant did not meet Listing 12.05(C) was supported by substantial evidence that demonstrated that the claimant had a high school diploma, was not in special education classes, completed his own social security forms, and had earnings from 1983 – 1990 between $13,696 and $18,408 per year).

different medical opinions and the reasons for doing so.  See Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011).  The failure to do so is reversible error.  See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or unsupported by the evidence of record.  Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004).  "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence."  Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion."  Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Adamo v. Commissioner of Soc. Sec., 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

In the present case, Plaintiff has presented a diagnosis of mild mental retardation from examining psychologist Dr. Blanton, as well as Dr. Blanton's opinion that Plaintiff has deficits in adaptive functioning due to mental retardation that manifested

prior to age 22 in the areas of "communication, work, use of community resources, [and] functional academic skills." (Tr. 409).    However, as the ALJ found, these opinions are inconsistent with Dr. Blanton's own findings, including his notations in his evaluation notes that Plaintiff's "thoughts and conversations were simple but logical;" his "[a]ssociations were intact;" his "affect was flat but appropriate;" "[n]o confusion was noted;" he was "obsessing about his pain;" he was "alert and oriented to time, place, person, and situation;" and "[h]is judgment was good for work and financial type decisions." (Id. at 408).   In addition, Dr. Blanton documented that Plaintiff's activities of daily living include living alone, having a drivers license, being able to shop and handle his own money, going to church, and reading the newspaper. (Id. at 409). Also, while Dr. Blanton opined that Plaintiff has marked limitations in his ability to "understand detailed or *complex* instructions, carry out *detailed* or *complex* instructions, remember *detailed* or *complex* instructions, [and] use judgment in *detailed* or complex work-related decisions" (emphasis added), he did not find similar limitations with respect to *simple, routine* instructions or decisions.[10]   (Id. at 410).

---

[10] The Court notes that Dr. Blanton also opined that Plaintiff "is likely to deteriorate emotionally if [he] is placed under additional stress[,] especially that of a job." (Tr. 409-10). Dr. Blanton appears to base this opinion on a diagnosis of

In addition to being inconsistent with his own findings, Dr. Blanton's opinions are inconsistent with the remaining substantial evidence in this case, including the following: Plaintiff reported to the Agency that he worked for approximately eleven years (from 1995 to 2006) in semi-skilled jobs (id. at 51, 60, 201, 207, 359). Plaintiff reported to both consultative psychologists Dr. Blanton and Dr. Reynolds that he enjoys reading newspapers and books and writing poetry (id. at 359, 409). Plaintiff lives alone and takes care of his own personal needs. (Id. at 52, 58, 237). Although it took multiple attempts, Plaintiff completed the written driving test and has a driver's license and is able to drive. (Id. at 54, 239). Plaintiff was enrolled in special education classes and did not pass the high school graduation exam; however, he successfully completed the twelfth grade. (Id. at 265, 359). In addition, psychological consultant, Dr. Richard Reynolds, Ph.D., examined Plaintiff on October 31, 2011, and documented that Plaintiff reported last working in 2009 and doing masonry work (semi-skilled work) for years. (Id. at 359). Plaintiff

---

depression. (Id.). However, his own testing conducted during his consultative evaluation of Plaintiff on May 1, 2013, revealed that Plaintiff was only "moderately" depressed, which does not support the severity of limitations expressed in this opinion. In any event, whether based on the diagnosis of depression or the diagnosis of mild mental retardation, this opinion is inconsistent with the substantial evidence in this case, as discussed herein.

also reported to Dr. Reynolds that he "conducts [his] activities of daily living without assistance," that he has friends and gets together with his friends regularly, that he attends church, that he has never sought mental health treatment because there is "no reason," and that his primary reason for seeking disability is problems with his right knee and ankle.   (Id. at 358-60).   While Dr. Reynolds noted that Plaintiff's answers to some questions that he posed were inconsistent with a person who had graduated from high school, he nonetheless observed that Plaintiff was cooperative, alert, and oriented to all spheres, that his speech was within normal limits, that his behavior was unremarkable, that his thought content was logical, that his thought associations were tight, that his insight was appropriate, and that his judgment was appropriate.   (Id. at 359-60).   Dr. Reynolds opined that Plaintiff "likely presents with no deficits in ability [to] understand and remember," that "[h]e may have *mild* difficulty in carrying out instructions due to Major Depressive Disorder," that he is likely to have *mild* difficulties in responding appropriately to supervisors, co-workers, and the public, or work stressors, in a work setting due to issues[/]problems related to Major Depressive Disorder and Generalized Anxiety Disorder," and that Plaintiff "would not need assistance with any awarded funds."   (Id. at 360) (emphasis added).

18

Based on the foregoing, the Court finds that Dr. Blanton's opinions related to Plaintiff's deficits in adaptive functioning are inconsistent with the substantial evidence in this case, including Plaintiff's work history, Plaintiff's activities of daily living, and the medical opinions of consultative psychologist Dr. Reynolds.  Therefore, they were properly given "little weight" by the ALJ.  (Id. at 37, 410).

The Court has considered Plaintiff's evidence that he was in special education classes in high school, that he failed the high school graduation examination after taking it three times, that he repeated the fifth grade, and that his math, reading, and spelling scores on tests conducted by Dr. Blanton were on the fourth and fifth grade levels.  (Doc. 12 at 2-3, 9-11). However, given the substantial evidence in this case that Plaintiff's adaptive functioning is well above that of a person with mild mental retardation, the Court finds that the ALJ's rebuttal of the Hodges presumption is supported by substantial evidence.  See Johnson, 2014 U.S. Dist. LEXIS 13497, 2014 WL 413492, *4  (S.D. Ala. Feb. 3, 2014)(where claimant had a Full Scale IQ score of 62, placing him in the range of mild mental retardation, and tested at the fourth grade level in math, reading and spelling, the ALJ's finding that claimant had high adaptive skills, including the capacity to take care of his own needs, perform activities of daily living, and successfully

perform four different jobs after leaving high school, was sufficient to support the decision that the claimant did not meet the requirements for Listing 12.05C). Accordingly, Plaintiff's claim must fail.

> **B. Whether the ALJ erred in rejecting the opinion of Plaintiff's treating physician, Dr. Perry Timberlake, M.D. regarding the severity of Plaintiff's pain and physical limitations?**

Plaintiff also argues that the ALJ erred in rejecting the opinions of his treating physician, Dr. Perry Timberlake, M.D., that he is unable to work because of his upper extremity problems, knee problems, and associated pain. (Doc. 12 at 13-14). The Commissioner counters that the ALJ did not err in rejecting Dr. Timberlake's opinions because those opinions are inconsistent with the substantial evidence in this case. (Doc. 15 at 11). Having carefully reviewed the record in this case, the Court agrees that Plaintiff's claim is without merit.

Generally speaking, "[i]f a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it

controlling weight."[11] <u>Roth v. Astrue</u>, 249 Fed. Appx. 167, 168 (11th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "An administrative law judge must accord substantial or considerable weight to the opinion of a claimant's treating physician unless good cause is shown to the contrary." <u>Broughton v. Heckler</u>, 776 F.2d 960, 961 (11th Cir. 1985)(citations and internal quotation marks omitted).

As discussed above, "[t]he requisite 'good cause' for discounting a treating physician's opinion may exist where the opinion is not supported by the evidence," "where the evidence supports a contrary finding," or where the doctor's opinions are merely conclusory or inconsistent with the doctor's own medical records. <u>Hogan</u>, 2012 U.S. Dist. LEXIS 108512 at *8, 2012 WL 3155570 at *3. "[T]he weight afforded a treating doctor's opinion must be specified along with 'any reason for giving it no weight, and failure to do so is reversible error.'" <u>Williams</u>, 2009 U.S. Dist. LEXIS 12010 at *4, 2009 WL 413541 at *1.

In this case, the ALJ found that Plaintiff has the severe impairments of obesity and right knee meniscus tear; however, the ALJ found, Plaintiff is able to perform a range of light

---

[11] "Controlling weight" is defined as a medical opinion from a treating source that must be adopted. <u>See</u> SSR 96-2P, 1996 SSR LEXIS 9, *3, 1996 WL 374188, *1 (1996).

work, with restrictions, such as being allowed to alternate
between sitting and standing positions every sixty minutes, not
operating foot controls with his right leg, and no climbing,
kneeling, crouching, or crawling.  (Id. at 35, 38, 40-41).  As
Plaintiff points out, the ALJ assigned "very little weight" to
the opinions of his treating physician, Dr. Timberlake, that
Plaintiff cannot engage in any form of gainful employment
because of upper extremity problems, right knee problems, and
associated pain.  (Id. at 40, 393-94, 397).  Having reviewed the
record at length, the Court finds that Dr. Timberlake's opinions
are inconsistent with the substantial evidence in this case and,
thus, were properly discredited by the ALJ.

     The record reveals that on April 25, 2012, Dr. Timberlake
completed a Clinical Assessment of Pain form opining that
Plaintiff's pain is "intractable" and "virtually
incapacitating," that physical activity would increase his pain
to an extent that bed rest would be necessary, and that his
medication would place severe limitations on even the simplest
of tasks.  (Id. at 393).  In addition, on that same date, Dr.
Timberlake opined in a Medical Source Statement (Physical)
("MSS") that Plaintiff can sit and stand/walk for only one hour
in an eight-hour workday, can lift/carry no more than one pound
frequently and five pounds occasionally, can never climb, bend,
or reach overhead, can rarely grasp or handle, and can rarely

push or pull with his arms or legs.  (Id. at 394).  Also, in his treatment notes dated February 3, 2012, Dr. Timberlake noted, "this patient is completely and totally disabled to do gainful work now or in the future."  (Id. at 397).

As the ALJ found, although Dr. Timberlake treated Plaintiff from August 2009 to the date of the hearing in May 2013, his opinions, which render Plaintiff unable to sit, stand, or walk for more than one hour a day and unable to lift or carry more than one pound frequently, are inconsistent with Dr. Timberlake's own treatment notes, which do not document this severe level of functional limitations. [12]  For example, as stated, Dr. Timberlake opined in the Medical Source Statement (Physical) that Plaintiff can lift/carry no more than one pound frequently and five pounds occasionally, can rarely grasp or handle with his fingers, can rarely push or pull with his arms, and can never reach overhead.  (Id. at 394).  However, at the time that Dr. Timberlake rendered those opinions on April 25, 2012, he had never noted complaints by Plaintiff regarding his upper extremities, with the one exception of a single reference to Plaintiff complaining of right hand pain on August 8, 2012. (Id. at 380-97, 412-20).  Two years after Dr. Timberlake rendered these opinions, the record shows that in July and

---

[12]  The ALJ found Dr. Timberlake's opinions to be "grossly inconsistent" with the objective evidence.  (Tr. 40).

September, 2014, Plaintiff complained of bilateral arm and shoulder pain, for which Dr. Timberlake treated him with Hydrocodone, Cymbalta, and Celebrex. (Id. at 10-12). In addition, Dr. Timberlake's opinions regarding the severity of Plaintiff's knee problems and pain are contradicted by his contemporaneous note in the MSS that Plaintiff requires no assistive device to ambulate (id. at 394). Moreover, all of Dr. Timberlake's opinions (including Plaintiff's severe and disabling limitations in both his upper and lower extremities) are inconsistent with Plaintiff's own statements that he lives alone, that he takes care of all of his own personal care needs, and that he conducts his activities of daily living without assistance. (Id. at 237, 359).

Dr. Timberlake's opinions are also inconsistent with the remaining medical evidence in this case, including the treatment notes of orthopedist, Dr. Anthony Tropeano, M.D., who treated Plaintiff on August 31, 2009, for right knee pain. Dr. Tropeano's notes reflect that he ordered an MRI, which showed a lateral meniscus tear; however, it does not appear that Plaintiff ever returned to Dr. Tropeano for any further treatment. (Id. at 284-87). Although Plaintiff testified that Dr. Tropeano wanted to perform surgery to repair the knee and that Plaintiff could not afford it, there is no notation in Dr. Tropeano's records or any other physician's records (including

Dr. Timberlake's) recommending surgery.   (Id. at 54).

In addition, consultative physician, Dr. John Mitchell, M.D., examined Plaintiff two years later, on October 28, 2011, and noted full range of motion in upper extremities ("arms, hands, and fingers"), normal dexterity, normal grip strength, normal balance, "mild" limp on right leg, reduced range of motion and tenderness over the right knee, "mild crepitus" upon flexion of the right knee, normal heel/toe walk, normal reflexes, and no assistive device used.   (Id. at 350-54).   Dr. Mitchell concluded "need further work up for his right knee pain."   (Id. at 355).

As the ALJ found, the record shows that Plaintiff suffers from the severe impairment of a right knee meniscus tear that has required medication and injection treatment in a physician's office and in a hospital emergency room (id. at 293, 334) with pain medication.   However, neither the substantial medical evidence, nor the evidence of Plaintiff's activities of daily living, supports Dr. Timberlake's opinions that Plaintiff is unable to engage in any form of gainful employment because of his upper extremity and right knee problems and associated pain. (Id. at 393-94, 397).   Therefore, the ALJ had good cause to discredit those opinions.   In addition, the Court finds that the substantial evidence supports the ALJ's determination that Plaintiff has the RFC to perform a range of light work, with the

stated restrictions.  Accordingly, Plaintiff's claim is without merit.

**V.**     **Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED.**

**DONE** this **29th** day of **March, 2016.**

                                        **/s/ SONJA F. BIVINS**
                         **UNITED STATES MAGISTRATE JUDGE**